# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONTE ROLANDO HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>JESUS A. VALERO, et al.,<br><br>    Defendants. | 1:11-cv-02123 BAM (PC)<br><br>SCREENING ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND GRANTING LEAVE TO AMEND<br>(ECF No. 9)<br><br>THIRTY-DAY DEADLINE |

### First Screening Order

**I.   Screening Requirement and Standard**

Plaintiff Donte Rolando Harris ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971).  Plaintiff's first amended complaint, filed on July 23, 2012, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

Bivens actions and actions under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

**II.      Plaintiff's Allegations**

Plaintiff currently is housed at the Terre Haute Federal Correctional Institution in Terre Haute, Indiana. The events alleged in his complaint occurred while Plaintiff was housed at

United States Penitentiary Atwater ("USP-Atwater") in Atwater, California.  Plaintiff names the following defendants:  (1) Special Investigative Services Officer Jesus A. Valero; (2) Special Investigative Services Officer M. Castro; (3) Discharge Officer Capel; and (4) Officer Micheal Bucio.

Plaintiff alleges as follows:  On December 29, 2009, Plaintiff was placed in the Special Housing Unit ("SHU") at USP-Atwater for investigation reasons.  The next day, the SHU property room officer allowed Plaintiff to view his property in two clear plastic bags and obtain allowable property in the SHU.  The property officer catalogued all items in both bags, including two photo albums with photos.

On March 28, 2010, the investigation of Plaintiff was lifted, but a "Threat Assessment" was placed on him, foreclosing his return to the general population.  From March 28, 2010 to December 7, 2010, Plaintiff was not informed that a secondary investigation was implemented against him or his property.

On December 4, 2010, Plaintiff submitted a request to the SHU property officer for Plaintiff's yearly review of property held in the SHU storage room.  The property officer honored the request and escorted Plaintiff to a holding cell.  During the review, Plaintiff's two photo albums were in the bag.

On December 6, 2010, Plaintiff received 25 photos in the mail, which increased his number of photos from 620 to 645, along with 30 approved catalogs.

On December 7, 2010, Plaintiff suddenly was informed to pack his cell property for transfer.  Plaintiff was taken downstairs where Discharge Officer Capel was waiting.  Plaintiff placed his cell property on a push cart and looked for the rest of his property that should have been brought out from the SHU property room storage.  Plaintiff asked Officer Capel, "Where is the rest of my property?"  Officer Capel ignored him.

Upon arrival in Receiving and Discharge ("R&D"), Plaintiff told Officer Capel that he wanted to inventory all of his property in SHU storage.  Officer Capel denied his request.  Plaintiff informed Officer Capel that he had a right to be present when his property was being

packed. Officer Capel stated that Plaintiff would get his property when he got to where he was going.

Plaintiff then approached Officer Capel's supervisor, Inmate Systems Manager M. Fisher, about allowing Plaintiff to stand witness while staff inventoried his property before he departed the institution. M. Fisher stated, "Harris, I know your [sic] going to file a suit, but we don't have time for that. It'll get to you when you arrive at the new institution. And besides, it will take you four or more years after you file suit to get an answer anyhow, so be my guest, file."

Officer Capel advised Plaintiff to step into the strip down room. After Plaintiff was strip searched and on his way out of the room, Officer Micheal Bucio and two other officers came into the room. Officer Bucio aggressively approached Plaintiff, stopped approximately two inches from his nose and began yelling. They were in this adverse position for fifteen seconds before Officer R. Luke pulled Plaintiff by the arm and placed him in a holding cell.

The transfer bus did not arrive until three hours later. Plaintiff alleges that he had ample time to inventory his property. Plaintiff alleges that three days prior to being informed to pack up, four other inmates that were housed in the SHU were allowed to inventory their property. Plaintiff contends that he should have been called to do so as well since they were all on the same schedule for transfer on December 7, 2010.

Plaintiff contends that the last-minute pack out call was purposefully orchestrated so that Plaintiff could not inventory his property. Plaintiff contends that Special Investigative Service Officer Jesus A. Valero confiscated his property and placed it under investigation, which procedurally allowed Officer Valero and Special Investigative Service Officer M. Castro carte blanche to seize his property, including two photo albums that contained 645 photos of family and friends.

Upon his arrival at the new institution, Plaintiff's photos and catalogs were missing, indicating that only his personal effects were targeted by Defendants. Plaintiff contends that Defendants knew that the photos of his family and friends were his emotional connection.

Plaintiff asserts that he was never admitted to the general population and could not have lost his photo albums due to his own neglect.

Plaintiff asserts that on January 20, 2011, Inmate Systems Officer M. Delagarza inventoried his property. The officer did not log in two photo albums.

On February 18, 2011, Inmate Systems Officer M. Bucio submitted Plaintiff's paperwork to Officer J. Valero and M. Castro. Officer Bucio did not log in his two photo albums.

On March 17, 2011, Officers J. Valero and M. Castro confiscated 12 inches of UCC documentation, but Plaintiff's photos were not listed as items of confiscation.

On March 18, 2011, Officers J. Valero and M. Castro resubmitted the remaining portions of his property back to Officer M. Bucio for shipment. Plaintiff's two photo albums were not logged.

On March 2, 2011, Plaintiff received the first box of property sent by M. Delagarza, which included 232 photos that Plaintiff had with him in the SHU cell.

On April 6, 2011, Plaintiff received the second box of property sent by M. Bucio. Plaintiff's two photo albums were not shipped.

Plaintiff alleges that from November 7, 2007, Officer J. Valero confiscated Plaintiff's mail. Plaintiff believes that Officers J. Valero and M. Castro waited until Plaintiff was no longer at USP-Atwater to confiscate his property. Plaintiff alleges that Officers J. Valero and M. Castro took his two photo albums in retaliation for Plaintiff's filing a lawsuit against Officer J. Valero. Plaintiff also alleges that he was denied procedural due process in the confiscation of his property.

Plaintiff seeks compensatory damages of $25,000.

**III.    Discussion**

**A.  Bivens Claim for Intentional Deprivation of Property in Violation of the Due Process Cause**

Plaintiff has raised a Bivens claim for deprivation of property in violation of the Due Process Clause. This claim is foreclosed by the existence of a meaningful post-deprivation

remedy for the loss. Hudson v. Palmer, 468 U.S. 517, 533 (1984). Such a remedy exists in the Prison Administrative Remedy Program. 28 C.F.R. §§ 542.10-542-16.

This claim cannot be cured by amendment.

**B. Federal Tort Claims Act ("FTCA")**

To the extent Plaintiff is pursuing a FTCA claim for the confiscation of his property in this action, he may not do so. First, Plaintiff has not named a proper defendant. In a FTCA action, the United States is the only proper defendant. Lance v. United States, 70 F.3d 1093, 1095 (9th Cir. 1995). Second, and significantly, Plaintiff's claim regarding the confiscation of his property is barred by the FTCA's exception for detention of goods by a law enforcement officer. 28 U.S.C. § 2680(c). The FTCA waives the federal government's immunity from suit for certain torts of its employees. Fang v. United States, 140 F.3d 1238, 1241 (9th Cir.1998) (quoting Dalehite v. United States, 346 U.S. 15, 17, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)). This waiver is subject to specific exceptions, including "[a]ny claim arising in respect of ... the detention of any goods, merchandise, or other property by . . . any . . . law enforcement officer." 28 U.S.C. § 2680(c). This exception is broad enough to include prison guards that are alleged to have deliberately stolen or destroyed private property. See Daley v. United States, 2009 WL 1047930, at *4 (D. Ariz. Apr. 20, 2009) (citing Ali v. Federal Bureau of Prisons, 552 U.S. 214 (2008). The federal government has not waived its sovereign immunity from, and the federal courts do not have subject matter jurisdiction over, Plaintiff's FTCA claims for deprivation of property.

This claim cannot be cured by amendment.

**C. Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech and to petition the government may support a civil rights claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985); see also Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that

inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir.2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009).

In order to state a claim, a plaintiff must allege specific facts demonstrating that a defendant took an adverse act because of plaintiff's First Amendment activity. The plaintiff's protected conduct must have been "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271, quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989).  The adverse action must not have reasonably advanced a legitimate correctional goal.

Defendants Capel and Bucio

Plaintiff has failed to state a cognizable retaliation claim against Defendants Capel and Bucio.  At a basic level, Plaintiff has failed to allege that either of these defendants confiscated his property or did so in retaliation for any protected conduct.  Indeed, there is no allegation that Defendants Capel and Bucio were aware of any protected conduct engaged in by Plaintiff.

Defendants Valero and M. Castro

Plaintiff also has failed to state a cognizable retaliation claim against Defendants Valero and M. Castro.  Although Plaintiff provides a conclusory allegation that Defendants Valero and Castro confiscated his personal property in retaliation for Plaintiff filing a lawsuit against Defendant Valero, Plaintiff has failed to allege any specific facts to suggest that Defendants Valero and Castro were aware of the lawsuit or any other protected conduct.

IV.     **Conclusion and Order**

Plaintiff's complaint fails to state a cognizable claim against any of the defendants. Plaintiff cannot cure the due process or FTCA claims by amendment, but the Court will allow him to amend the First Amendment retaliation claim to the extent that he is able to do so. Accordingly, the Court will provide Plaintiff with the opportunity to file a second amended

complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Therefore, Plaintiff's second amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint; and
4. <u>If Plaintiff fails to file a second amended complaint in compliance with this order, this action will be dismissed with prejudice for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:   **June 10, 2013**              /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE